**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DULCE FERNANDEZ CORONA,<br>Petitioner,<br><br>v.<br><br>JOSHUA JOHNSON,<br><br>Respondent. | Case No. 5:26-cv-03696-AYP<br><br>**ORDER GRANTING PETITION AND ISSUING A WRIT FOR HABEAS CORPUS** |

## I. SUMMARY

Petitioner, Dulce Fernandez Corona, is a native and citizen of Mexico who is currently in the physical custody of Respondents at the Adelanto ICE Processing Center, in Adelanto, California. (Dkt. No. 1 (“Petition”); Dkt. No. 4 Memorandum of Law in Support of Petition (“Mem. ISO Pet.”).) In June 2024, Petitioner and her family entered the United States without inspection after fleeing persecution from their home state. (Dkt. No. 20 at 10 (“Reply”).) She was detained by U.S. Customs and border Protection (“CBP”) shortly after entry. *Id*. After a few days in custody, she and her child were granted

humanitarian parole by CBP and released after they determined that she was neither a danger nor a flight risk. *Id.*; Reply at 10.

Petitioner remained out of custody for two years. She reported to ICE for a routine check-in appointment on April 22, 2026, and was redetained. (Reply at 12.) Petitioner did not receive notice nor an opportunity for her to contest her re-detention. *Id.*

On July 1, 2026, Petitioner, originally proceeding pro se, filed this Writ of Habeas Corpus under 28 U.S.C § 2241, arguing Respondents detained her without notice and a hearing prior to re-detention thereby violating her due process rights.[1] She seeks an order requiring Respondents to release her from immigration detention or to provide an immigration bond hearing. (Pet.; Mem. ISO Pet.; Reply.)

In their Answer, Respondent states, "Respondent is not presenting an opposition argument with respect to Petitioner receiving a bond hearing at this time. Respondent is opposed to the requested release because – as described below – (1) Petitioner violated her release conditions four (4) times and (2) Petitioner was arrested for felony domestic violence." (Dkt. No. 11 at 2

[1] The Court construes the Petition liberally, as Petitioner was pro se at the time it was filed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation modified) ("A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."). Here, Petitioner's original Petition misstates her claim for relief, omits certain respondents, and misstates a few facts. Petitioner was appointed counsel on July 29, 2026 (Dkt. No. 13.) As Petitioner filed his petition pro se, "the documents [s]he filed must be liberally construed." *Butler v. Long*, 752 F.3d 1177, 1180 (9th Cir. 2014), *as amended on denial of reh'g and reh'g en banc* (June 24, 2014). Thus, the Court construes additional arguments in the Reply—filed after Petitioner's counsel appeared—as incorporated into the Petition.

("Answer").) Respondents did not present opposition to Petitioner's due process claim. *Id*.

In light of Respondents' position, the Court finds that Petitioner has demonstrated that the Government violated her right to due process by re-detaining her without notice and an opportunity to be heard. The Court therefore grants the Petition and issues a writ of habeas corpus requiring Petitioner's immediate release and preventing her re-detention absent pre-deprivation notice and a hearing at which the Government must justify the need to detain her.

## II. FACTUAL BACKGROUND

Petitioner is citizen of Mexico. (Mem. ISO Pet. at 1.) She entered the United States with her family on June 4, 2024, without inspection after fleeing persecution in her home state of Zacatecas. *Id*.; Reply at 10. Soon after entry, CBP apprehended Petitioner. (Mem. ISO Pet. at 1; Reply at 10.) CBP released Petitioner from custody on humanitarian parole under 8 U.S.C. § 1182(d)(5)(A). (Reply at 10.) CBP issued Petitioner a Notice and Order of Expedited Removal under 8 U.S.C. § 1182(a)(7)(A)(i)(I). *Id*. On June 24, 2024, an asylum officer interviewed Petitioner and determined that she had established a credible fear of persecution or torture. (Reply at 11.) That same day, United States Citizenship and Immigration Services ("USCIS") served Petitioner a Notice to Appear, placing her in removal proceedings under 8 U.S.C. § 1229a. *Id*.

ICE enrolled Petitioner in its Alternatives to Detention ("ATD") Intensive Supervision Appearance Program ("ISAP"). *Id*. ICE initially affixed Petitioner with a GPS ankle monitor. *Id*. However, after Petitioner demonstrated compliance, the monitor was removed. *Id*. She continued to be

surveilled through an application on her cellular telephone, and periodic in-person check-ins with ISAP and ICE. *Id.*

Following her release from CBP custody, Petitioner began establishing her life in the United States. *Id.* She and her family moved to Southern California, to be near extended family. *Id.* Petitioner stayed home to care for her daughter while her partner worked to support their family. *Id.* While her daughter was at preschool, Petitioner worked by making and selling gorditas and tamales to her neighbors and friends. *Id.* In the afternoons, Petitioner would take her daughter to the park. *Id.* Petitioner also attended a local Catholic church with her family. *Id.* Meanwhile, she and her family pursued immigration relief in immigration court. *Id.* Petitioner and her family attended at least one hearing in non-detained immigration court and were awaiting their next hearing when Petitioner was detained. *Id.*

In addition to attending all immigration court hearings, Petitioner strove to comply with all ICE and ISAP requirements. *Id.* During the period when she had a GPS-tracking ankle monitor, Petitioner diligently checked to make sure it had a green light, meaning that it was charged and functioning properly. *Id.* Occasionally, she had technical problems with ISAP's phone application. For example, on or around August 8, 2025, Petitioner attempted to check in on the ISAP application on her phone, BI SmartLINK. *Id.* She alleges the application was malfunctioning and was unable to complete the required check-in. *Id.*

On April 15, 2026, the Long Beach Police Department arrested Petitioner after she and her partner got into an argument. *Id.* The police released Petitioner less than 24- hours later after finding that there were insufficient grounds for making a criminal complaint against her. *Id.* at 12.

This is her sole criminal arrest, and she has had no criminal charges or convictions in the United States. *Id.*; Mem. ISO Pet. at 4.

Respondent disputes that she complied with her ISAP requirements and alleges that Petitioner violated her release conditions for with ATD by disabling location services with ISAP on November 24, 2024, April 11, 2026, and April 17, 2026. Respondent also asserts that Petitioner violated her release conditions with ATD by missing a self-report check-in with ISAP on August 8, 2025, and a domestic violence arrest on April 15, 2026. (Ans. at 2.)

On April 22, 2026, ICE detained Petitioner after she appeared, as ordered, for an in-person ICE check-in at the Los Angeles ICE Field Office. (Reply at 12.) ICE provided no notice nor an opportunity for her to contest her re-detention. *Id.* That same day, ICE issued a Form I-213, which alleged that Petitioner had "violated her release conditions within the [Alternatives to Detention ("ATD")] program." *Id.* The Form I-213 states that "[Petitioner] was informed of her ATD program violations and that the violations were subject to a custody redetermination." *Id.* The Form I-213 goes on to list four alleged ATD violations, spanning from November 24, 2024 to April 17, 2026. *Id.*

However, Petitioner was not provided with any notice, correspondence, or warning about her alleged ATD/ISAP violations prior to her re-detention on April 22, 2026. *Id.* Petitioner alleges that she was not even alerted to the alleged ATD violations until after she had already been detained and transferred to Adelanto ICE Processing Center where she remains. *Id.* Petitioner argues she never intentionally tampered with or disabled her GPS monitoring, and she does not know to what the alleged violations are referring. *Id.* at 13.

Petitioner and her family have suffered immensely since her detention in April 2026. *Id* Her daughter is "struggling significantly with severe

emotional distress" due to her mother's absence, according to her daughters preschool teacher. *Id*. Additionally, while in detention, Petitioner reports a lack of clean water, spoiled food, and unsanitary conditions. *Id*.

On July 1, 2026, Petitioner filed this Writ of Habeas Corpus under 28 U.S.C § 2241, seeking an order requiring Respondents to release her from immigration detention. (Pet.; Mem. ISO Pet.; Reply.) Petitioner argues Respondents detained her without notice and a hearing prior to re-detention thereby violating her due process rights. She seeks an order requiring Respondents to release her from immigration detention or to provide an immigration bond hearing. (Pet.; Mem. ISO Pet.; Reply.)

In their Answer, Respondent states, "Respondent is not presenting an opposition argument with respect to Petitioner receiving a bond hearing at this time. Respondent is opposed to the requested release because – as described below – (1) Petitioner violated her release conditions four (4) times and (2) Petitioner was arrested for felony domestic violence." (Ans. at 2.) Respondents did not present opposition to Petitioner's due process claim. *Id*.

For the reasons set forth below, the Court **GRANTS** the habeas petition.

## III. PROCEDURAL HISTORY

Petitioner filed the instant habeas petition and Memorandum of Law In Support of the Petition on July 1, 2026. (Pet.; Mem. ISO Pet.) The Court, on July 7, 2026, entered the Notice of General Order 26-05 and Briefing Schedule, directing Respondent to show cause why the writ of habeas corpus should not be granted and thereby adopting the standard procedures and briefing schedule under the General Order. (Dkt. No. 7.) On July 7, 2026, the Court, on its own motion, referred the case to the Federal Public Defenders office for consideration of appointment of counsel for Petitioner. (Dkt. No. 9.)

On July 29, 2026, Counsel for Petitioner appeared. (Dkt No. 13.) Respondent filed their Answer on July 13, 2026. (Ans.) Petitioner filed her Reply on August 14, 2026. (Reply.) Thus, the matter is fully briefed.

On July 31, 2026, Petitioner consented to proceed before Magistrate Judge for all proceedings in this case. (Dkt. No. 15.) The action has been fully consented to according to the General Order 26-05 and will proceed before a magistrate judge. (Dkt. No. 19.)

## IV. DISCUSSION

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and...the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that she is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### A. Petitioner's Detention Violates Due Process.

The Court now turns to the merits of Petitioners' claims.

Petitioner argues that the revocation of her humanitarian parole and her re-detention without notice or an opportunity to be heard violates her procedural due process rights under the Fifth Amendment.[2] (Mem. ISO of

[2] Petitioner's Petition—that she filed pro se—argues that her continued detention without a hearing violates the Fifth Amendment's Due Process Guarantee. (Mem. ISO Pet.) She

Pet.; Reply at 15.) Respondent only asserts that "Respondent is not presenting an opposition argument with respect to Petitioner receiving a bond hearing at this time. Respondent is opposed to the requested release because – as described below – (1) Petitioner violated her release conditions four (4) times and (2) Petitioner was arrested for felony domestic violence." (Ans. at 2.) Notably, Respondents provide no response to Petitioner's due process claim in their Answer. (*See generally* Ans.)

Accordingly, the Court construes Respondents' choice not to address Petitioner's due process claim as a concession. *See e.g., Soleimani v. Larose*, No. 25-CV-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting habeas petition where government's response to the petition failed to respond to numerous claims raised in the petition, including a Fifth Amendment due process claim); *Singh v. Chiang*, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession); *Aperyan v. Semaia*, No. 5:26-CV-00699, 2026 WL 874734, at *4 (C.D. Cal. Mar. 27, 2026) (same); *see also Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) (noting that "failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue").

Regardless, even if Respondents had not conceded the issue, the Court would grant the Petition on the merits of Petitioners' due process claim. A growing body of decisions in this District and across the Ninth Circuit have found that immigration authorities violated or likely violated due process by re-detaining noncitizens who had been released shortly after their entry to the

---

also argues she has a valid parole status. *Id*. Respondent does not respond to her Due Process argument in their Answer.

United States without notice or an opportunity to be heard. *See M.V.F. v. Santacruz*, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO ordering release of noncitizen who had been released on their own recognizance shortly after entering the United States and was re-arrested at ICE check-in). *See also Cruz v. Lyons,* No. 5:25-CV-02879-MCS-MBK, 2025 WL 4051129, at *1 (C.D. Cal. Nov. 6, 2025) (granting TRO ordering release of noncitizen who had been paroled into the United States and was re-arrested at appointment with United States Citizenship and Immigration Services); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition for noncitizen who had been paroled in the United States and was re-arrested at ICE check-in).

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. *Id*. at 693–94. Freedom from physical restraint lies at the core of this protection. *See id.* at 690–91.

In analyzing a procedural due process claim, the Court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court

examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge*. *Id.* at 1179–80. The *Mathews* framework considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *Mathews* is not a bright-line test but rather a flexible test depending on the different circumstances. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022); *see also Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 589 (9th Cir. 1998). Here, the *Mathews* factors tip in favor of Petitioner.

1. ***Constitutionally Protected Liberty Interest***

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e] [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). After an initial release from custody on conditions, even a person paroled following a conviction for a criminal offense for which they may lawfully have remained incarcerated has a protected liberty interest in that conditional release. *Morrissey v. Brewer,* 408 U.S. 471, 482 (1972). This liberty interest does not arise exclusively in the criminal context; the Supreme Court compared the right guaranteed to parolees to a "preliminary hearing" to that guaranteed to welfare recipients prior to the termination of their benefits. *Morrissey*, 408 U.S. at 485 (citing *Goldberg v. Kelly*, 397 U.S. 254, 267-271 (1970)). Further, the Supreme Court has recognized that an individual on parole, which is analogous to release on own recognizance, has a liberty interest under the Fourteenth Amendment's Due Process Clause requiring "some informal procedural guarantees." *Morrissey*, 408 U.S. at 482-83. "[T]he loss of liberty

entailed is a serious deprivation requiring that the parolee be accorded due process." *Gagnon v. Scarpelli*, 411 U.S. 778, 781 (1973). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–33(N.D. Cal. 2025) (collecting cases).

Noncitizens "who have once passed through our gates, even illegally," are entitled to "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[ ] an entry" and trigger due-process protections for admissions decisions if a noncitizen is detained shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop...ties" in this country, "[her] constitutional status changes accordingly," and she "has a right to due process," *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher,* 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107; *see also Gagnon*, 411 U.S. at 782 (extending *Morrissey* to probation revocation); *Young v. Harper*, 520 U.S. 143, 145 (1997) (extending *Morrissey* to Oklahoma's preparole program because it is also "a kind of parole").

The Court finds that the liberty interest protecting parolees from

revocation without a hearing applies with equal force to noncitizens released on humanitarian parole. *See J.O.L.R., Petitioner, v. Minga Wofford, Mesa Verde ICE Processing Ctr. Facility Administrator*, No. 1:25-CV-01241-KES-SKO (HC), 2025 WL 2908740, at *5 (E.D. Cal. Oct. 14, 2025) ("The Court finds that petitioner has a protected liberty interest in his release."); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205 (9th Cir. 2022) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings.").

When CBP released Petitioner from custody on humanitarian parole after determining that she was not a danger nor a flight risk, it conferred a conditional liberty interest that may not be withdrawn without constitutionally sufficient process. *See Morrissey*, 408 U.S. at 482; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019). Agency precedent likewise recognizes that a prior release should not be revoked absent materially changed circumstances. *See Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981); *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018).

From June 2024 until she was re-detained April 22, 2026, Petitioner had spent nearly two years in the United States released on parole. *Id.* Petitioner is, thus, entitled to at least those protections described above with respect to her protected liberty interest in remaining out of immigration custody.

2. ***Procedural Protections***

**a) Private Interest**

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in maintaining her life out of custody. Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). While Petitioner has remained subject to release on humanitarian parole, which is a form of conditional parole,

following her release in June 2024, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles [her] to constitutional due process before [s]he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi*, 792 F. Supp. 3d at 1032 ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). Petitioners' release included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey*, 408 U.S. at 482. This conditional liberty is "'valuable and must be seen as within the protection of the Fourteenth Amendment.'" *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

The Petitioner resided in the United States for nearly two years before her re-detention. (Reply at 11.) As her circumstances illustrate, a person can develop meaningful ties in such a relatively short period of time. Following her release from immigration custody, Petitioner has lived in the United States, began establishing her life by moving to Southern California with her family to be near extended family, worked by making and selling gorditas and tamales to her neighbors and friends while her daughter was at preschool, and attended a local Catholic church with her family. *Id*. Additionally, she and her family have pursued immigration relief in immigration court.

While individuals apprehended shortly after entry in the United States may have "a lesser liberty interest" "at the margin" than other noncitizens who have resided in the United States for decades, "the same important interest is at stake—freedom from prolonged detention." *Diouf v. Napolitano*, 634 F.3d 1081, 1086-87 (9th Cir. 2011), *overruled on other grounds by Johnson*

*v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022).

Consistent with this conclusion, multiple courts, including the undersigned Judge, have found that noncitizens developed protectable liberty interests in their release from immigration custody for periods comparable to those at issue here. *See, e.g.*, *Aperyan v. Semaia*, No. 5:26-CV-00699, 2026 WL 874734, at *6 (C.D. Cal. Mar. 27, 2026) (finding petitioner had resided in the United States for approximately a year and half before her recent re-detention amounted to a liberty interest); *Clene C. D. v. Robbins*, No. 1:25-CV-01463-KES-SKO, 2025 WL 3492118, at *5 (E.D. Cal. Dec. 4, 2025) (finding a petitioner had a constitutionally protected liberty interest in "eleven months she spent at liberty" following release under § 1226(a)); *Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to petitioner released for "over two years" under Section 1226(a)); *Pinchi*, 792 F. Supp. 3d at 1034 (same, for petitioner released "over two years" under Section 1226(a)); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321–22 (W.D. Wash. 2025) (same, petitioner released for approximately 21 months under Section 1226(a)).

The Court therefore concludes that the Due Process Clause protects Petitioner's substantial liberty interest in maintaining her freedom from confinement.

**b) Risk of Erroneous Deprivation**

With respect to the second *Mathews* factor, the Court finds that "[t]here is an unacceptably high risk that the government would erroneously deprive—or already has erroneously deprived—Petitioner of her liberty interest absent a pre-detention hearing." *Cruz*, 2025 WL 4051129, at *4. The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing

danger to the community. *Zadvydas*, 533 U.S. at 699. But Petitioner has not been afforded any process to determine whether her detention in fact advances either purpose.

The record suggests that Petitioner is not a flight risk or danger. Petitioner's initial release from custody "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). Petitioner was released on conditional humanitarian parole. 8 C.F.R. § 212.5 allows for release on Parole "only on a case-by-case basis for "urgent humanitarian reasons" or "significant public benefit," provided the aliens present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5. "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Since her release, Petitioner has not given any reason to think that the Government's initial determination was in error. The only incident on Petitioner's record, an arrest, did not amount to charges being filed. The single arrest, alone, did not establish that Petitioner posed a danger to the community or a flight risk sufficient to justify immediate re-detention without proper process. In fact, it underscores the importance of providing Petitioner notice and a meaningful opportunity to be heard before depriving her of the liberty interest. Further, the Respondent alleges multiple violations of her ADT release conditions. These also are insufficient reasons to justify immediate re-detention without proper pre-deprivation process. Moreover, Petitioner was detained when she presented herself at an ICE check in appointment. Presenting herself voluntarily at an ICE check-in appointment,

is a clear indication that she is not a flight risk.

Based on this record, the Court concludes that there is a high risk that the lack of pre-deprivation process—that is, a hearing to determine whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner's unnecessary detention.

**c) Government Interest**

As to the third *Mathews* factor, "as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously" released noncitizens like Petitioners "without a pre-detention hearing." *Cruz*, 2025 WL 4051129, at *4 (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." *Singh v. Andrews,* 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in her unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore concludes that the Government's re-detention of Petitioner without adequate pre-deprivation process violated due process.

## V. CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner, Dulce Fernandez Corona's (A #: 249-506-149) immediate release, subject to conditions of supervision that existed prior to her detention on April 22, 2026, along with the return of her personal belongings, including all of her identification, work permits, and other documentation, and preventing her re-detention absent pre-deprivation notice and a constitutionally adequate pre-deprivation hearing at which the Government will bear the burden to prove by clear and convincing evidence that Petitioner is a danger to the community or a flight risk before Petitioner may be re-detained; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody.

Additionally, the Petitioner and the Court shall be provided with at least three (3) days notice prior to Petitioner being removed from this jurisdiction.

Dated: September 30, 2026

HON. ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE